UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>60. JONATHAN CASIANO<br><br>                 Defendant | Criminal No. 19-CR-10459-RWZ |

**DEFENDANT JONATHAN CASIANO'S SENTENCING MEMORANDUM**

# TABLE OF CONTENTS

Pages

I. INTRODUCTION .................................................................................................................1

II. RELEVANT BACKGROUND AND CIRCUMSTANCES ................................................3

    a. Mr. Casiano's Background ........................................................................... 3

    b. Mental Health and History of Substance Use ............................................. 4

    c. Mr. Casiano's Future .................................................................................... 5

III. THE OFFENSE CONDUCT ................................................................................................6

IV. MR. CASIANO'S SENTENCING REQUEST ....................................................................7

V. CONCLUSION ...................................................................................................................14

DM_US 189524225-1.099744.0198

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*U.S. v. Caballero-Vázquez*,
   896 F.3d 115 (1st Cir. 2018) ...................................................................................................9

*U.S. v. Carpenter*,
   803 U.S. F.3d 1224 (11th Cir. 2015) .......................................................................................9

*U.S. v. Foy*,
   646 F.Supp.2d 1055 (N.D. Iowa 2009) ...................................................................................9

*U.S. v. Garcia*,
   497 F.3d 964 (9th Cir. 2007) ...................................................................................................8

*U.S. v. Guzmán-Vázquez*,
   784 Fed.Appx. 806 (1st Cir. 2019) ...................................................................................10, 11

*U.S. v. Hendrickson*,
   25 F.Supp.3d 1166 (N.D. Iowa 2014) ...............................................................................11, 12

*U.S. v. Lisenbery*,
   866 F.3d 934 (8th Cir. 2017) ...................................................................................................9

*U.S. v. Matheny*,
   450 F.3d 633 (6th Cir. 2006) ...................................................................................................8

*U.S. v. Mosley*,
   312 F.Supp.3d 1289 (M.D. Ala. 2018) ..................................................................................12

*U.S. v. Vega-Salgado*,
   769 F.3d 100 (1st Cir. 2014) ....................................................................................................9

*U.S. v. Walker,*
   252 F.Supp.3d 1269 (D. Utah 2017) ......................................................................................11

*United States v. McLean*,
   No. 2:21cr335-MHT, 2022 WL 89533 (M.D. Ala. March 25, 2022) ....................................10

**Statutes**

18 U.S.C. § 3553(a) .................................................................................................................1, 7

21 U.S.C. § 841(a)(1) ...................................................................................................................1

**Other Authorities**

Briana Lees, Lindsay R. Meredith, Anna E. Kirkland, Brittany E. Bryant, and Lindsay M. Squeglia, *Effects of Alcohol use on the Adolescent Brain and Behavior*, 192 Pharmacol Biochem Behav 1, 1 (May 2020), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7183385/?report=classic ............................10

L. M. Squeglia, B.A., J. Jacobus, B.A., and S. F. Tapert, Ph.D., *The Influence of Substance Use on Adolescent Brain Development*, 40 Clinical EEG and Neuroscience 31, 38 (Feb. 2020), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2827693/ .............................................10, 11

Shahnaza Hamidullah, Hayley H. A. Thorpe, Jude A. Frie, Richard D. Mccurdy, and Jibran Y. Khokhar, *Adolescent Substance Use and the Brain: Behavioral, Cognitive and Neuroimaging Correlates,*, 14 Front Hum Neurosci. 298 (Aug. 2020), https://doi.org/10.3389%2Ffnhum.2020.00298................................................................9

I.    INTRODUCTION

Defendant Jonathan Casiano ("Mr. Casiano") respectfully requests that the Court impose a sentence of 96 months (8 years) of incarceration, the low end of the range provided in the plea agreement pursuant to Federal Rule of Criminal Procedure ("Rule") 11(c)(1)(C). While this sentence is below the sentence calculated under the advisory U.S. Sentencing Guidelines, 96 months of incarceration—a <u>very</u> substantial sentence and one that is longer than the vast majority of other sentences imposed in the case in which Mr. Casiano was originally charged—more accurately reflects Mr. Casiano's culpability and fulfills the purposes of sentencing as reflected in 18 U.S.C. § 3553(a).

Mr. Casiano pleaded guilty to two counts in a Superseding Information charging him with possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1). *See* Superseding Information, Dkt. No. 2477. Although he was originally one of 62 defendants charged in an indictment charging most of the other defendants with a violent RICO conspiracy, Mr. Casiano was <u>never</u> charged in that conspiracy and was not alleged to have participated in a single act of violence. *See* Indictment, Dkt. No. 1. Rather, he was added to the indictment, as defendant number 60, and charged in one stand-alone count charging him with being a felon in possession of a firearm. *See* Indictment, Count 7. As set forth in the plea agreement, the government will move to dismiss that single count against him after sentencing. *See* Plea Agreement, Dkt. No. 2482, ¶ 1.

The drug charges to which Mr. Casiano has pleaded guilty are serious and Mr. Casiano has a criminal history that reflects his early exposure to drug use and abuse and challenges in escaping his substance abuse disorder. An eight-year sentence reflects the seriousness of these crimes and Mr. Casiano's criminal history. Such a sentence also acknowledges the mitigating factors that

brought Mr. Casiano here today, including that early drug use and mental health challenges, and recognizes that Mr. Casiano has developed skills both in and out of prison that will help him turn his life around. As reflected in the letters submitted by his father, grandmother, aunt, surviving brother, cousin and uncles, Mr. Casiano has earned the love and respect of his family, most of whom are located in Florida—far away from Springfield, MA where Mr. Casiano has lived most of his life—and all of whom are committed to helping him start anew. *See* Exhibits 2 through 7. Mr. Casiano has the skills to secure employment after he is released and intends to live in Florida with and near his extended family. Pre-Sentence Report ("PSR") ¶¶ 85-86; Casiano Statement, Exhibit 1 at 2.

As Mr. Casiano writes, this is a turning point for him. Casiano Statement at 1. Even if the Court adopts the sentence he requests, it is an incredibly long one. He has, and will continue to, take advantage of the resources and programs that are offered to him while incarcerated—in particular, he hopes that he will be accepted into the intensive drug treatment program offered by the Bureau of Prisons ("BOP") and will overcome what has been essentially a life-long battle with substance abuse. PSR ¶ 83; Casiano Statement at 2-3 ("I am currently on suboxone to help with withdraws from drugs I recommend to ppl that really want to change. Because of my drug use I have lost half my life to drugs."). He has specific plans upon his release, and hopes to work with family in a barber shop. PSR ¶ 90. He also hopes to give back to his community by becoming a drug counselor and guiding others down the right path to prevent them from making the bad decisions he has made. Casiano Statement at 1.

For these, and the additional reasons detailed below, Mr. Casiano respectfully requests that this Court sentence him to 96 months (8 years) in prison; a significant sentence that is

2

sufficient, but not greater than necessary, to serve the purposes of sentencing in the federal system.

## II.     RELEVANT BACKGROUND AND CIRCUMSTANCES

### a.      Mr. Casiano's Background

Mr. Casiano was raised by his mother in Springfield, Massachusetts after his parents divorced when Mr. Casiano was five years old.  PSR ¶ 22.  After the divorce, Mr. Casiano had only intermittent contact with his father and witnessed domestic violence between his mother and her then-boyfriend, who used drugs and left his drug paraphernalia in their home.  *Id.*  The family home was robbed at least three times, after which the family was forced to move.  *Id.*  The moves were hard on Mr. Casiano, who was responsible for caring for his younger siblings while his mother worked and attended school at night.  *Id.*  Although Mr. Casiano's mother was incredibly hard working, the family was financially unstable and depended on public assistance to make ends meet.  *Id.*

Mr. Casiano and his mother also suffered a heartbreaking trauma when his brother was murdered in an Orlando nightclub shooting in 2016.  PSR ¶ 68.  Mr. Casiano, who was incarcerated at the time, could not attend the funeral, and instead recalls speaking to his mother as they both cried and cried.  Neither has been the same since.   Mr. Casiano turned to his creativity and love of art as a way to escape the loss.  *See* Exhibit 12.

Despite setbacks and challenges, including multiple prison sentences, as Mr. Casiano's family's letters make clear, and as his cousin Adrian Reyes in particular explains, Mr. Casiano "has always been supportive of anyone in [his] family" and "is always consuming as much knowledge as he can."  *See* Exhibit 3.  Although, as detailed below, Mr. Casiano dropped out of high school, he earned his GED and is very proud of having obtained his machinist license.  PSR

3

¶ 85; Casiano Statement at 2. He is currently taking classes in history, social studies and math. He is also taking classes for anger management and has joined a mentorship program while incarcerated. Multiple family members also speak to his creativity and his love of drawing, a skill he has continued to develop while in prison. *See* Exhibit 2 (letter from aunt explaining: "He loves to stay active, and remain very creative. He loves to draw and designs interesting sculptures. Once he made me a cross with my name and the world in it out of a hand soap bar. I still have it on display in my dining area. He also loves braiding hair among a lot of other cool things. He blows my mind on how smart and creative he is."); Exhibit 3 (letter from cousin explaining: "He can draw, he can sculpt pictures out of soap bars, and he can create beautiful post cards that he sends to my mother during mother's day and her birthday!"); Exhibits 10 through 20 (compilation of Mr. Casiano's art, including pictures of bar soap carvings, sculptures, and drawings). He also braids hair, one of the many skills he relies on to survive prison and will rely on to obtain employment when released. PSR ¶¶ 78, 90; Casiano Statement at 1.

      **b.**    **Mental Health and History of Substance Use**

Mr. Casiano has suffered from attention deficit hyperactivity disorder ("ADHD") since he was very young, and while he received some special education services, he found school difficult and he dropped out of his vocational high school in 2003, when he was 17 years old. PSR ¶¶ 77, 85. By then, Mr. Casiano was also using and abusing alcohol and drugs on a near daily basis. PSR ¶ 80.

As detailed in the Pre-Sentence Report, Mr. Casiano began using Percocet and marijuana daily when he was only 13 years old. *Id.* He tried alcohol when he was 14 and by the time he was 18 he was drinking alcohol daily, sometimes consuming one or two bottles of hard liquor a day. *Id.* When he was 21, Mr. Casiano began using heroin/fentanyl and cocaine. *Id.* He later

started using other drugs as well, including MDMA or "Molly" and "Angel Dust." *Id.* As the PSR and his arrest record make clear, he suffered numerous black-outs and overdoses that required medical attention. *Id.* As Mr. Casiano explained to the Probation Officer, he knows that this cycle of drug use and abuse, and inability to overcome his substance abuse disorder, fueled his bad decision-making and criminal activity. PSR ¶ 83. Indeed, his criminal history is entirely related to possessing and selling drugs to make money to fuel his own need for drugs. PSR ¶¶ 41, 42, 44 - 48, 53, 58, 59, and 62.

While Mr. Casiano has a strong desire to stop, and has attempted to do so, he knows that he cannot do it on his own. Indeed, he has reached out for help before—attending treatment programs at the Foundation House in Springfield, Clean Slate also in Springfield and the Hope House in Worcester. PSR ¶ 82. He also participated in After Incarceration Services in Springfield. *Id.* He has been receiving medically assisted drug treatment since being incarcerated and completed a 10-session opioid treatment program. *Id.*; Exhibit 9. When the Probation Officer mentioned the possibility of the 500-hour Residential Drug Abuse Program ("RDAP") offered by the Bureau of Prisons, Mr. Casiano lit up. PSR ¶ 83. He knows that this is the moment he can turn his life around by putting an end to his substance abuse and an end to his criminal activity.

    c.    **Mr. Casiano's Future**

As the Court can see from their letters, there has been an outpouring of support from Mr. Casiano's family. *See* Exhibits 2 through 8. Most of his family is now in Florida, and he hopes to be designated to a facility where they can visit him. *See also* Casiano Statement at 2; Exhibit 2 (letter from aunt stating: "Also we are eagerly and desperately praying that he could be transferred here to the state of Florida so that he can finish the remainder of his sentence closer to

his immediate family in this state as we will be able to visit him on a weekly bases and be there for him immediately to pick him up once he is released from prison."); Exhibit 3 (letter from cousin explaining that Mr. Casiano "being in Florida after prison will allow him to be surrounded by his immediate family (mother, sister, brother, nieces[sic] and nephews) and he will also have my mother and I to help him get back on his feet the right way."); Exhibit 4 (letter from Mr. Casiano's brother explaining that he "feel[s] like [Mr. Casiano] should get transferred to Florida close to his immediate family so [they] can visit him while he is doing his time!"); Exhibit 5 (letter from Mr. Casiano's father explaining that his hope is that Mr. Casiano "moves to Florida because once he is released, he can live with us, his family, and be away from those people in Massachusetts that have harmed him and led him down this path.").  When released, Mr. Casiano plans to live in Florida, near family who intend to support him as he makes the transition to life outside of prison and obtains gainful employment.  Mr. Casiano has a plan this time—he is excited to use his skills braiding hair, skills he has developed in prison, to work in a barber shop.

    As Mr. Casiano makes clear in his own statement, he is very sorry for his conduct and takes responsibility for his actions. Casiano Statement at 1, 2 ("I am responsible for my actions."; "I ask God for forgiveness & ask you your honor to forgive me.").  He wants to dedicate his life to helping others by becoming "a drug counselor to not only better [himself] but to help others not make the same mistakes [he] made."  Casiano Statement at 1.  He sees his family as his "real friends" and hopes that he can be transfered to a Florida prison."  Casiano Statement at 2.

### III.    THE OFFENSE CONDUCT

    Although Mr. Casiano was charged in a massive indictment charging most of the 61 other defendants with a violent, gang-fueled RICO conspiracy, Mr. Casiano was never charged in that conspiracy.  *See* PSR ¶ 8;  Indictment.  Rather, he was charged in a single, stand-alone count

6

with being a felon in possession of a firearm, a charge arising out of a July 2019 traffic stop. *See* PSR ¶¶ 1; 12-22; Indictment, Count 7.  The U.S. Attorney's Office "adopted" that case from the District Attorney's Office in Springfield.

As set forth in the Plea Agreement, Mr. Casiano did not plead guilty to the gun charge, but rather to two drug charges—one related to drugs found in Mr. Casiano's car during the July 2019 traffic stop and a second charge from drugs found in an apartment in Springfield in February 2020.  Plea Agreement ¶ 1.  Both incidents were also the subject of state charges in addition to the federal ones here.  PSR ¶¶ 1, 5.  The July 2019 case has already been dismissed and the District Attorney's Office has agreed to dismiss the February 2020 case against Mr. Casiano upon sentencing in this matter.  Plea Agreement ¶¶ 1, 5.

Again, the drug charges to which Mr. Casiano has pleaded guilty are very serious.  But they are separate and distinct from the RICO conspiracy with which his former co-defendants were charged.  Presumably, had the evidence suggested that Mr. Casiano was a part of the violence that is alleged as part of that conspiracy, he would have been charged in it.  He was not.

## IV.   MR. CASIANO'S SENTENCING REQUEST

Mr. Casiano respectfully requests that the Court impose a sentence of 96 months (8 years) in prison.  Such a sentence is very lengthy, and almost triple any other sentence Mr. Casiano has ever served.  It is "sufficient, but not greater than necessary" to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and provide Mr. Casiano with the needed training and other services, in particular the intensive RDAP program.  *See* 18 U.S.C. § 3553(a).  An eight-year sentence also reflects the nature and circumstances of the offense and history and characteristics of the defendant, Mr. Casiano, including his criminal history, his long personal struggle with drugs and alcohol, and

his promising future.  Finally, such a sentence, which is still significantly longer than those imposed on most of his co-defendants for their brutal, violent conduct, more appropriately reflects the need to avoid unwarranted sentencing disparities.

*First*, an eight-year sentence is very significant.  Mr. Casiano was 33 years old when he was arrested in July 2019 and, with an eight-year sentence, will be over 40 when released.  The majority of the almost three years that he has already been incarcerated on these charges has also been served during the height of the COVID-19 pandemic, leaving him even more isolated from visitors and even other inmates.  He has been detained in state custody, far from family who might be able to visit and, as a federal detainee in state custody has been a target of other inmates.  *See* PSR ¶ 54.  Mr. Casiano's time in custody to date has been challenging and the additional time served pursuant to an eight-year sentence will further punish him.  It will send a strong message to him personally, and the world at large, about the seriousness of his crimes.  A sentence beyond eight years in prison is not necessary to further the purposes of sentencing, nor is it just.

*Second,* when considering Mr. Casiano's personal characteristics, and as detailed above, the Court will see a man who is creative, has worked hard to get an education under difficult circumstances, and has earned the love and respect of a family who is going to support him when he is released.  *See* Casiano Statement at 1- 3; Exhibits 2 through 8 (compilation of letters from his father, aunt, brother, cousin, uncles and grandmother); Exhibits 10 through 20 (art created by Mr. Casiano).  Another mitigating factor, personal to Mr. Casiano, that this Court can and should consider is his struggle with substance abuse.  *See U.S. v. Garcia*, 497 F.3d 964, 972 (9th Cir. 2007) (holding that district courts can consider a defendant's substance abuse disorder when

8

deciding the sentence); *U.S. v. Matheny*, 450 F.3d 633, 641 (6th Cir. 2006) (describing district court's consideration of the defendant's substance abuse since early childhood).

While not taken into consideration under the Sentencing Guidelines, as the First Circuit and other courts across the country have concluded, a defendant's struggles with substance abuse disorder can be a mitigating factor in sentencing. *See U.S. v. Caballero-Vázquez*, 896 F.3d 115, 121 (1st Cir. 2018) (identifying prior substance abuse as a potentially mitigating factor in sentencing); *U.S. v. Lisenbery*, 866 F.3d 934, 937 (8th Cir. 2017) (describing an extensive drug addiction as a mitigating factor while noting that the district court did not find that it justified the underlying offense); *U.S. v. Carpenter*, 803 U.S. F.3d 1224, 1231, 1233 (11th Cir. 2015) (referencing evidence of a defendant's "drug problem" as mitigating and affirming the district court's explanation of its sentence in which the court acknowledged prior drug use as a mitigating factor); *U.S. v. Vega-Salgado*, 769 F.3d 100, 104 (1st Cir. 2014) (noting that the district court acknowledged a lifelong battle with drug addiction as a potential mitigating factor); *U.S. v. Foy*, 646 F.Supp.2d 1055, 1064-65 (N.D. Iowa 2009) (finding that a defendant's introduction to drugs and alcohol at the age of 12 was a mitigating factor in sentencing).

Indeed, the medical community knows and understands so much more now about substance abuse disorder and, in particular the serious effects drug and alcohol use can have on a person's brain. The science is clear that those who are exposed to drugs and alcohol at a young age—like Mr. Casiano—are most severely impacted. *See* Shahnaza Hamidullah, Hayley H. A. Thorpe, Jude A. Frie, Richard D. Mccurdy, and Jibran Y. Khokhar, *Adolescent Substance Use and the Brain: Behavioral, Cognitive and Neuroimaging Correlates*, 14 Front Hum Neurosci. 298 (Aug. 2020), https://doi.org/10.3389%2Ffnhum.2020.00298 (studying the effects of drugs and alcohol use in adolescents and noting specifically that "adolescent drug exposure may

9

contribute to increased risk for the development of cognitive deficits, psychopathology, or subsequent substance use disorders that may be related to the structural and functional changes in the brain."); Briana Lees, Lindsay R. Meredith, Anna E. Kirkland, Brittany E. Bryant, and Lindsay M. Squeglia, *Effects of Alcohol use on the Adolescent Brain and Behavior*, 192 Pharmacol Biochem Behav 1, 1 (May 2020), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7183385/?report=classic ("Findings from human adolescent studies suggest that binge drinking and heavy alcohol use is associated with poorer cognitive functioning on a broad range of neuropsychological assessments, including learning, psychomotor speed, attention, executive functioning, and impulsivity."); L. M. Squeglia, B.A., J. Jacobus, B.A., and S. F. Tapert, Ph.D., *The Influence of Substance Use on Adolescent Brain Development*, 40 Clinical EEG and Neuroscience 31, 38 (Feb. 2020), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2827693/ (explaining that "exposure to alcohol and drugs during a period of critical neurological development may interrupt the natural course of brain maturation and key processes of brain development" and "[c]ognitive deficits resulting from these alcohol and drug related neural insults have potentially harmful implications for subsequent academic, occupational, and social functioning extending into adulthood."). For this reason, courts too are in a better position to consider substance abuse, the relevance of the abuse to the underlying crime, and the need for treatment, when determining an appropriate sentence. *See United States v. McLean*, No. 2:21cr335-MHT, 2022 WL 89533, at *2 (M.D. Ala. March 25, 2022) (noting that a defendant's substance abuse disorder may be considered during sentence when "defendant's conduct is driven by substance abuse"); *U.S. v. Guzmán-Vázquez*, 784 Fed.Appx. 806, 809 (1st Cir. 2019) (considering the defendant's history of drug abuse and rehabilitation needs *during* sentencing). And because the relevance of substance abuse is such

10

an individualized inquiry, the court has broad discretion when determining whether and how to consider it as a mitigating factor. *See Guzmán-Vázquez*, 784 Fed.Appx. at 809 (stating that district courts receive substantial deference in weighing mitigating factors, including a defendant's prior drug use).

    As detailed above, Mr. Casiano began using drugs and alcohol when he was only 13 years old. PSR ¶ 80. As the PSR makes clear, his use and struggles with substance abuse impacted his ability to stay in school and dictated his entire life, including his criminal history, virtually all of which is drug related. PSR ¶¶ 41, 42, 44 - 48, 53, 58, 59, 62, 83. In this way, Mr. Casiano's experience is similar to the defendant's life experience in *U.S. v. Walker*, where the district court found "Mr. Walker's life-long addiction relevant, and mitigating, to his personal culpability," 252 F.Supp.3d 1269, 1292-93 1273 (D. Utah 2017). In that case, the defendant, who was being sentenced for bank robbery, had a history of alcohol abuse starting from a young age and began using methamphetamine in his twenties. *Id.* at 1276. As the *Walker* court found "there are 'fundamental differences between the addict and non-addict brain,'" *see id.* at 1292 (quoting *U.S. v. Hendrickson*, 25 F.Supp.3d 1166, 1175 (N.D. Iowa 2014)), especially where alcohol and drug use starts at a young age. *See Hendrickson*, 25 F.Supp.3d at 1175 (noting that because the defendant "abused brain-altering drugs through most of the years during which his adolescent brain was still physically developing," he made "poor decisions based on impulse and immaturity"). The court further found that sentencing a defendant who had struggled with drugs would serve little general deterrent effect, *see id.* 1293, and that the evidence in the case strongly connected the defendant's substance abuse disorder to his criminal behavior. *See id.* at 1305. The court thus ultimately concluded that the defendant's struggle with substance abuse warranted a significant variance from the Guidelines and imposed a non-prison sentence. *See id.* at 1306; *see*

11

*also Hendrickson*, 25 F.Supp.3d at 1174 ("The answer, at least in most cases, is that addiction mitigates a defendant's culpability. By physically hijacking the brain, addiction diminishes the addict's capacity to evaluate and control his or her behaviors. Rather than rationally assessing the costs of their actions, addicts are prone to act impulsively, without accurately weighing future consequences."); *U.S. v. Mosley*, 312 F.Supp.3d 1289, 1291, 1295 (M.D. Ala. 2018) (imposing a sentence significantly below the Sentencing Guidelines in light of the defendant's substance abuse disorder, his other mental illness, and the benefit of more targeted treatment). Mr. Casiano, of course, is not asking that this Court depart such that he serves no prison time. He is asking for a very significant sentence, but one that reflects his life-long struggle with substance abuse and the strong connection between that experience and the crimes to which he has pleaded guilty. The Court can and should consider that as a mitigating factor when imposing sentence.

*Third,* anything more than the eight-year sentence Mr. Casiano requests would create an unwarranted, unfair and unjust disparity with the sentences his co-defendants have received for their participation in a violent conspiracy. Indeed, the indictment charged 46 of the 62 defendants with participation in a racketeering conspiracy that involved murder, robbery, assault and money laundering. *See* Indictment, ¶ 7. Others were charged in a massive drug distribution conspiracy. *See* Indictment, ¶¶ 11, 13, 15. They were charged as leaders and enforcers of the Latin Kings. *See* Indictment, ¶¶ 6-8. Mr. Casiano, however, was not charged in that conspiracy and the government has not alleged that he participated in a single murder, robbery or violent assault. Nor has the government alleged that he was a leader or an enforcer in the Latin Kings. Yet the sentence he faces is substantially more than those who did engage in such shocking, violent conduct. For example, according to the Government's sentencing memorandum, Wilson Peguero, who received a 30-month sentence, "oversaw [individual member's] activities and their

12

promotion within the criminal organization, recruited new members, implemented discipline within the ranks as necessary, and reported the activities of his chapter to state leadership." Sentencing Memorandum by USA as to Wilson Peguero, Dkt. No. 1498 at 3. Marlon Rivera, who was apparently a leader of the Fitchburg Chapter of the Latin Kings was sentenced to 35 months and 15 days in prison. Order, Dtk. No. 1530. Jose Vasquez, an alleged one-time "enforcer" in the gang, received 84 months. Order, Dtk. No. 2580. Other defendants who pled guilty to the racketeering conspiracy described in the indictment similarly received sentencings ranging from "time served" to 21 months, to 54 months, to 84 months in prison.[1]

The Court is of course very familiar with each of these individuals and imposed individual sentences based on each defendant's unique circumstances. Mr. Casiano understands that the drug crimes to which he has pleaded guilty, along with his criminal history, dictate not only minimum mandatory sentences that he could have faced but also the Sentencing Guidelines range calculated by Probation, none of which take into account the mitigating circumstances described herein. But the fact that Mr. Casiano was not even charged in such a violent

---

[1] Each of the following defendants pleaded guilty to Count 1 in the indictment: Michael Cecchetelli (4 years); Hector Manuel Vega (18 months); Michael Marrero (3 years); Gregory Peguero-Colon (36 months); Juan Liberato (21 months); Angel Roldan (84 months); Vincent Dzierwinski (22 months); Alexis Peguero (21 months); Matthew Palacios (33 months); Steven Familia Valdez (1 year and 1 day); Dante Lara (24 months); Angel Ortiz (27 months); Angel Rodriguez (44 months); Alexis Velasquez (21 months); Angel Calderon (84 months); Oscar Pena (24 months); Jose Rodriguez (54 months); Michael Cotto (54 months); Juan Figueroa (24 months); Shelton Johnson (54 months); Emanuel Lopez-Velez (60 months); Luis Mendez (78 months); Luis Santiago (46 months); Jose Vasquez (84 months); and Alfred Nieves (24 months); Jose Rodriguez (54 months); Roberto Vargas (40 months). The following defendants who also pleaded guilty to Count 1 of the Indictment received time served: Natanael Velazquez, Esther Ortiz, Sandra Correa, Taliyah Barboza, Kevin Guadalupe, Tyson Jorge, Raekwon Paris, Ines Lugo, Tanairy Ruiz, Alvin Mojica, Issac Felix-Rivera, and Robert Lara. Mr. Casiano is aware that Jorge Rodriguez received a sentence of more than 200 months in prison for his role in the violent RICO conspiracy and the drug distribution conspiracy charged in Count 2 (a charge that also did not include Mr. Casiano). Order, Dtk. No. 1473. According to the Government's Sentencing Memorandum regarding Mr. Rodriguez, he was the leader of the New Bedford Chapter. Dkt. No. at 8. As the leader he "controlled multiple trap houses, facilitating the drug dealing and violent crimes committed by the dozens of New Bedford Latin Kings members. Id. He also "manufactured the cocaine base for distribution to the trap houses and is captured on video doing so multiple times, in multiple kilogram amounts." Id. Mr. Rodriguez "oversaw [] witness intimidation and retaliation efforts, coordinated violence against rival gang members, and literal propaganda designed to spread the message of the Latin King's strength and ferocity over the internet." Id. at 10. Francisco Lopez also received 108 months as part of the conspiracy. Dkt. No. 1971. Frutuoso Barros also received 126 months as part of the conspiracy. Dkt. No. 2029.

13

conspiracy is telling and the Court can and should, in its discretion, consider his absence from that count when imposing sentence here. The Court should consider a sentence of eight years in prison—especially in light of the sentences imposed on the leaders, enforcers and violent actors that have already been sentenced—appropriate and necessary to avoid further disparate treatment of Mr. Casiano.

In sum, a sentence of eight-years in prison—the majority of which Mr. Casiano has yet to serve—is sufficient but not greater than necessary to serve the purposes of sentencing. It reflects the seriousness of Mr. Casiano's crimes, it punishes him, it will deter him and others. And yet it also gives Mr. Casiano a chance to recover from his substance abuse and emerge from this sentence with the ability to put his skills to good use, with the support of his family.

## V.   CONCLUSION

For the foregoing reasons, Mr. Casiano respectfully requests that the Court impose a sentence of 96 months in prison, with a recommendation that he participate in RDAP.

Respectfully submitted,

Jonathan Casiano

*By his attorneys,*

*/s/ Sarah E. Walters*
Sarah E. Walters (BBO # 638378)
Annabel Rodriguez (BBO # 696001)
MCDERMOTT WILL & EMERY LLP
200 Clarendon Street, Floor 58
Boston, Massachusetts 02116
Tel:   (617) 535-4000
Fax:   (617) 535-3800
sewalters@mwe.com
anrodriguez@mwe.com

Dated: September 2, 2022

## **CERTIFICATE OF SERVICE**

      I, Sarah E. Walters, certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on September 2, 2022

*/s/ Sarah E. Walters*
